UNITED STATES *v.* H. W. ROBINSON & Co. (No. 4116)[1]

[1] T. D. 49484.

United States Court of Customs and Patent Appeals, February 28, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument February 7, 1938, by Mr. Auster and Mr. Brown]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [1]

LENROOT, Judge, delivered the opinion of the court:

This appeal involves four reappraisement proceedings, in which the Customs Court, Second Division, affirmed a judgment of the trial court adjudging that:

\* \* \* as to all items involved to which the importer has or has not made voluntary additions on entry (except the items to which the importer has made additions to meet advances made by the appraiser), the entered values are sustained.

As to all items involved to which the importer has added on entry to meet advances made by the appraiser (except the items to which the importer has not made any voluntary additions), the unit invoiced values, less 2 per centum, plus 10 per centum, plus packing and cases, are sustained.

---

[1] JACKSON, Judge, took no part in the decision or consideration of this case.

The merchandise involved consists of complete, metal-mounted glass perfume bottles, and metal-mounted glass atomizers, imported in 1933 from Czechoslovakia.

Certain items of the imported merchandise were appraised by the local appraiser on the basis of their United States value, and certain other items were appraised on the basis of their cost of production, which appraised value in both cases exceeded the entered value of the respective items.

Before the trial court both parties introduced evidence, that of appellee consisting of testimony and affidavits, and that of the Government consisting of testimony and reports of special Treasury representatives. There was also incorporated into the record herein, over the objection of appellant, the record in an earlier case relating to similar merchandise imported by appellee, but in which earlier case the Government had appealed to reappraisement. In that case the judgment of the trial court in favor of the importer was affirmed by the appellate division, and no appeal was taken to this court. Said case was *United States* v. *H. W. Robinson & Co.*, reported in Reap. Dec. 3571, affirmed in Reap. Dec. 3817.

At the close of appellee's case before the trial court in the instant proceeding, the Government moved to dismiss the importer's appeals for failure of proof of a foreign or export value for the completed articles, upon the ground that the evidence of values related solely to parts of said articles. This motion was denied and exception was taken. Such denial is assigned as error in this appeal.

Appellee concedes that, if United States value and cost of production form the proper bases of reappraisement, respectively, the appraised values as found by the local appraiser are correct. There is no evidence in the record to the contrary.

Therefore, but two questions are here presented to us for determination:

1. Whether or not there is substantial evidence in the record supporting the findings of the lower tribunals that there was an export value of the involved merchandise at the time of the importation thereof.

2. If there be such substantial evidence, whether or not a certain charge, made by one Klaar, should be regarded as a commission paid said Klaar as a buying commissionaire or agent of appellee, or whether said Klaar should be regarded as a principal and said charge should be added to export value as a profit made by said Klaar upon said transactions.

If it should be found that there is no substantial evidence in the record to support the finding of the Customs Court tribunals of export value, then it will not be necessary to consider the second question.

As we view it, there is no material conflict in the evidence in the case upon the question of export value of the involved merchandise.

Both parties agree that there was no foreign value of the merchandise, and the record establishes that fact.

It appears that the merchandise here involved was actually imported by De Boer & Livingston, Inc., whose place of business is in New York City. We assume that appellee was the broker making the entry.

One M. P. Livingston testified both in the instant, and in the incorporated, cases that he was president of De Boer & Livingston, Inc. With respect to the merchandise here involved, he testified that he bought it personally in Gablonz, Czechoslovakia, during one of his periodical visits to that country. With respect to his method of purchasing the mounted bottles and atomizers, he testified in the instant case as follows:

Q. Now, Mr. Livingston, will you please tell us how you buy the merchandise of the kind under consideration, namely, mounted bottles and atomizers, when you go to Europe with the object of buying, and how you did buy the merchandise covered by the individual reappraisements now before the court?—A. The representative of W. Klaar, our commissionaire, takes me around to the various manufacturers of perfume bottles. I make a selection of these bottles.

Q. From samples submitted to you?—A. From samples which I see in the various factories. After we have selected a great many of these bottles, the representative of Klaar then takes me to a jewelry mounter of these metal goods. We select from an assortment which he also has there—we select our styles we are interested in; and Klaar then has these bottles shipped to the metal mounter, who in turn puts the trimmings on the bottles.

Q. Being the bottles that you selected with Klaar's representative, and the mountings which you selected with Klaar's representative; is that right?—A. That is correct. Then the bottle is finished by the jewelry mounter and is returned to Klaar complete.

Q. Then what?—A. Then I purchase the complete bottle from Klaar.

The trial court in its decision summarized the further testimony of said witness as follows:

The witness testified he paid Klaar "the *cost* of the completed article" "Plus the usual packing charges", and "He gets the usual 10% commissionaire's fee." He further testified he places his order with Klaar, pays him the price shown on the invoice, plus an addition for packing, and in addition thereto 10 per centum over and above; that when he purchases a perfume atomizer he purchases also the atomizer base in a similar manner to that already stated "through the representative of Klaar"; that Klaar then purchases the atomizer mounting, "and assembles the atomizer" by putting "the top part on the glass base, for which he makes no charge"; that all these goods were purchased through Klaar, with whom he agrees on the price, and whom he pays. The witness named several firms in the United States who purchase competitive and similar merchandise to that at bar; and was emphatic *that Klaar is not a manufacturer*, but a commissionaire and exporter.

In the record we find two affidavits of Hans Klaar, the representative of the firm of W. Klaar, the material portions of which affidavits read as follows:

I herewith affirm in lieu of an oath that the prices of the bottles No. 642, 644, 650, 657, and 658 delivered to the firm of De Boer & Livingstone, Inc., New York, are as follows:

| Bottles Nos. | 642 | 644 | 650 | 657 | 658 |
|---|---|---|---|---|---|
| Number of the Metal Mounting | · 1405 | 1407 | 1401 | 1393 | 1414 |
| Price of the Metal Mounting including labor of mounting Czecho Crown | 40 | 40 | 70 | 120 | 70. 00 |
| Price of the Bottles | 60 | 84 | 84 | 126 | 83. 40 |
| Total Czecho Crowns | 100 | 100 | 154 | 246 | 153. 40 |

(Czecho Crowns 154) per Dozen.

I herewith affirm that the above prices exactly agree with the various invoices of my suppliers.

I furthermore declare that during my business connections extending over 50 years, with the United States of America I have repeatedly supplied bottles jars and atomizers decorated in a similar manner with metal and stones, at the prevailing market prices which, to the best of my knowledge and belief, were always in accordance with the United States Customs Regulations.

In connection with Bottles No. 619, I declare that the price of the stopper alone supplied by Franz Stefezius, Josefsthal, was Czecho Crowns 25 per dozen.

\*     \*     \*     \*     \*     \*     \*

I, Hans Klaar, co-owner of the firm of W. Klaar, Gablonz a/N., declare that all the atomizer mountings supplied by me in the period from May to December 1933, to the firm of De Boer & Livingston, Inc., New York, were manufactured by Rachmann Metallwerke, Haida.

I furthermore declare that the prices for the atomizers on all my invoices to the firm of De Boer & Livingston, Inc., New York, are in no case lower than the costs of the bottles plus costs of the atomizer mounting and plus the costs for attaching the mounting and I, furthermore, declare that the prices for decorated perfume bottles on all my invoices for the firm of De Boer & Livingston, Inc., New York, are in no case lower than the costs of the bottles plus costs of the metal ornament, including the costs for attaching the mounting.

District Court in Gablonz a/N. Part VI, June 14, 1935.

It appears from the testimony that there are several other importers in the United States who purchase in Gablonz, through a commissionaire, metal-mounted perfume bottles and metal-mounted glass atomizers in the same manner as the involved merchandise was purchased. We find no substantial evidence in the record that, at the time of the exportation of such merchandise, any appreciable amounts of similar merchandise were purchased for export to the United States in any other way. The trial court, upon this point, stated in its decision:

There is no market in Czechoslovakia for this or similar merchandise. Practically all purchasers in the United States transact their business in Czechoslovakia in the same manner as these plaintiffs. The record is ample along that line. These articles are sold to any one in the United States at a certain value.

One Harry Marks, a witness on behalf of the Government, testified that he was a member of the firm of Marks & Rosenfeld, importers of glass bottles similar to those here involved, and that in 1933, on two occasions, he was in Czechoslovakia for the purpose of buying such bottles; that he purchased them through an agent in the same manner as the involved merchandise was purchased, except in one instance when he bought a quantity of completed, mounted bottles, but discontinued that method as he found that, by buying the parts separately, he could secure the complete, mounted bottles cheaper than to buy them in their completed condition.

The trial court found that the firm of W. Klaar was a *bona fide* commissionaire, and that its commission of 10 per centum formed no part of the dutiable value of the merchandise.

The decision of the appellate division upon this point states:

In support of its finding that Klaar was a bona fide commissionaire, the trial court quoted the following from the special agent's report:

W. Klaar acts as the United States importers' buying commissionaire for the Gablonz district and charges a 10 percent commission for his services, which consist of placing orders with the different makers located in and around Gablonz, inspecting and packing the goods when delivered to his premises, paying the different makers of the goods and shipping the merchandise.

In this connection it might be observed that if appellant's contention is correct that there is no export value for this merchandise, there would necessarily be no occasion for W. Klaar to act as the United States importers' buying commissionaire.

As was well stated by the trial court:

Many American importers purchase similar merchandise in Gablonz by the very method pursued by these plaintiffs. *En masse*, the special agent's reports introduced in evidence by the Government establish the same facts and that Klaar was not a manufacturer.

Appellee's counsel, in his brief, states:

* * * Appellee contends that Klaar is a bona fide buying commissionaire and that his ten percent commission is properly deductible as a bona fide buying commission. * * *

We construe the decisions of the Customs Court tribunals as sustaining appellee's contention, and we find substantial evidence in the record to support such contention.

We also find that there is substantial evidence in the record that the glass portions of the imported merchandise were freely offered for sale to all purchasers in the principal market of Czechoslovakia, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, and that the metal mountings affixed to said bottles and atomizers were likewise freely offered to all purchasers, in the usual wholesale quantities and in the ordinary course of trade, at a price which included the attachment of said mountings to said glass bottles.

The witness Livingston testified that merchandise such as, or similar to, the merchandise here involved was, in 1933, offered for sale freely in Gablonz, but it is clear from his entire testimony that he was referring to separate offerings of the bottles and the mountings therefor, and not offerings of the completed articles.

In the decision of the appellate division we find the following:

The trial court, in a well-considered opinion, found that there was not a market for this or similar merchandise in the country of exportation. This finding is amply supported by the record. The trial court also found that there was an export value for this merchandise at the dates of the four shipments here under consideration, and this finding is also amply supported by the record. In support of the latter finding, the trial court quoted the following from the special agent's report, offered in evidence by appellant:

The parties interviewed claimed that they were free to sell any of the articles shipped to the United States by them, to any customer in countries other than the United States, but that besides the atomizers, nobody would buy metal mounted glassware, except a few pieces for the tourist trade, that being an article appealing only to American customers.

In addition to the above-quoted statement by the special agent, appellee offered ample and convincing evidence to support the trial court's finding that there was an export value for this merchandise.

The matter above quoted from the special agent's report referred only to representatives of the firm of W. Klaar, appellee's agent, who were interviewed by said special agent. The record shows that Klaar did not ship merchandise such as, or similar to, that here involved to any one in the United States except De Boer & Livingston, Inc. Appellee's brief upon this point states:

Exhibit 1 (106544–A), R. 184, is the Treasury representative's report offered by the Government. It states that Klaar did not ship to anyone else but to De Boer & Livingston. Of course, he did not, because he was employed as De Boer & Livingston's buying agent. * * *

We are at a loss to understand upon what theory the Customs Court tribunals could give any weight whatever to the extract from the special agent's report, quoted in the decision of the appellate division, upon the subject of export value of the merchandise under the provisions of section 402 (d) of the Tariff Act of 1930, which reads as follows:

SEC. 402. VALUE.

*　　*　　*　　*　　*　　*　　*

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Whether Klaar was free to sell such or similar merchandise to purchasers in any country other than the United States is wholly immaterial in the determination of the dutiable export value of the involved merchandise.

We must hold that there is no substantial evidence in the record that the complete articles here imported were freely offered for sale to all purchasers in the manner provided by said section 402 (d).

We also hold that there is substantial evidence that the method by which the involved merchandise was purchased was in the usual course of trade in Czechoslovakia.

There remains the question of whether or not the export values of the glass bottles and the export values of the metal mountings, attached thereto by the seller of the mountings, may be combined to arrive at the export value of the completed article. The same question arises in the case of the atomizers, where the mountings were attached by appellee's buying agent, Klaar.

If the decision appealed from is correct, an agent of an importer, or the importer himself, may visit a foreign country, there buy from different manufacturers all the parts of an article, one manufacturer finally completing and assembling the article, and the American importer may successfully claim the export value of the completed article is the export value of the various parts thereof, when the completed article is not freely offered for sale for exportation to the United States in the manner provided by section 402 (d).

In order to arrive at this conclusion, it must be assumed that a completed article has no greater value than the separate parts of which it is composed. This assumption, it seems to us, is impossible. It is unthinkable to us that any foreign dealer would go to the trouble and expense of selecting and purchasing the various parts of an article, cause them to be assembled and made integral as one complete article, and then freely offer the complete article to all purchasers in the usual wholesale quantities at a price equal to the combined values of the separate parts.

Neither can it be presumed that, if the metal mounter had purchased the glass bottles and mounted them with metal, he would have freely offered them for sale at a price which would have included a profit arising only out of the mounting of the same, without any profit upon the investment made by him in the purchase of the glass bottles.

The same observation would be applicable if the manufacturer of the glass bottles bought the mountings for the bottles. Presumably the glass bottle manufacturer would not have freely offered the completed bottles for sale without first adding a profit upon his investment in the mountings.

Neither counsel for appellee nor counsel for the Government has produced any authorities upon this point, and we have found none.

However, it is clear to us that, under the facts in this case, such a method of arriving at dutiable value may not be resorted to. It is possible that, under a different state of facts, where all the parts are made and sold by a single manufacturer, and their attachment together may be made by the ultimate user, either in the country of exportation or in the United States, through mere manual manipulation, a combining of the export values of the parts may be resorted to in determining the export value of the completed articles. Such a case is not here present, and we express no opinion with respect thereto.

We are compelled to hold that there is no presumption that the export value of a completed article is the same as the combined export values of the parts of which the article is composed, and therefore proof of the export values of the separate parts of which the involved merchandise was composed does not constitute any substantial evidence of the export value of the complete articles, in the condition in which they were imported.

Having come to this conclusion, it is unnecessary to consider other errors assigned by the Government.

It follows from the foregoing that the appellate division of the Customs Court should have reversed the judgment of the trial court and remanded the cause with directions either to dismiss appellee's appeals to reappraisement, in accordance with the motion to dismiss made by the Government before the trial judge, or to grant a new trial.

As the case before us presented substantially the same questions as were involved in the case incorporated in the instant record, except as to burden of proof, and inasmuch as it would seem that all relevant facts relating to the export values are contained in the record before us, we do not believe that a new trial would be warranted.

For the reasons herein stated, the judgment appealed from is reversed, and the cause is remanded with directions to *reverse* the judgment of the trial court and *remand* the case to it with instructions to *dismiss* appellee's appeals to reappraisement.